UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                        )
JP MORGAN CHASE BANK,                   )
                                        )
       Plaintiff                    )
       (Defendant-in-Counterclaim), )
                                        )
v.                                      )    CIVIL ACTION NO. 3:02CV2266 (AVC)
                                        )
RIDGEFIELD PROPERTIES, LLC, and         )
STOP & SHOP SUPERMARKET CO.             )
(sic),                                  )
                                        )
       Defendants                   )
       (Plaintiffs-in-Counterclaim).)
_____)

## THE STOP & SHOP SUPERMARKET COMPANY LLC'S ANSWER AND COUNTERCLAIMS

The Stop & Shop Supermarket Company LLC ("Stop & Shop") (improperly named as "Stop & Shop Supermarket Co." in the Complaint) answers JP Morgan Chase Bank's ("Chase") Complaint as follows:

### First Defense

The Complaint fails to state a claim, in whole or in part, on which relief may be granted.

### Second Defense

Stop & Shop answers the numbered paragraphs of the Complaint as follows:

### "Parties"

1.      Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 1 of the Complaint, and on that basis denies the allegations set forth in the first sentence of Paragraph 1 of the Complaint.  Stop & Shop denies the remaining allegations contained in Paragraph 1 of the Complaint.

2.      Admitted that The Stop & Shop Supermarket Company LLC is a Delaware corporation with its principal place of business at 1385 Hancock Street, Quincy, Massachusetts. Further answering, Stop & Shop admits that it operates a supermarket at Copps Hill Plaza, Ridgefield, Connecticut.  Except as otherwise admitted herein, Stop & Shop denies the allegations contained in Paragraph 2 of the Complaint.

3.      Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 3 of the Complaint, and on that basis denies the allegations set forth in Paragraph 3 of the Complaint.

4.      Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 4 of the Complaint, and on that basis denies the allegations set forth in Paragraph 4 of the Complaint.

<u>"Jurisdiction and Venue"</u>

5.      Stop & Shop responds that the allegations contained in Paragraph 5 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint, and on that basis denies the allegations set forth in Paragraph 5 of the Complaint.

6.      Stop & Shop responds that the allegations contained in Paragraph 6 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 6 of the Complaint, and on that basis denies the allegations set forth in Paragraph 6 of the Complaint.

7.      Stop & Shop responds that the allegations contained in Paragraph 7 of the Complaint call for a legal conclusion to which no response is required.  Further answering, Stop & Shop admits that it conducts business in the State of Connecticut.  Except as otherwise admitted herein, Stop & Shop denies the allegations contained in Paragraph 7 of the Complaint.

8.      Stop & Shop responds that the allegations contained in Paragraph 8 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 8 of the Complaint, and on that basis denies the allegations set forth in Paragraph 8 of the Complaint.

"Facts Common to all Claims for Relief"

9.      Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of Paragraph 9 of the Complaint, and on that basis denies the allegations set forth in the first sentence of Paragraph 9 of the Complaint. Further answering, the allegations contained in the second sentence of Paragraph 9 call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop denies the allegations set forth in the second sentence of Paragraph 9 of the Complaint.

"The Lease"

10.     Stop & Shop responds that the allegations contained in Paragraph 10 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 10 of the Complaint, and on that basis denies the allegations set forth in Paragraph 10 of the Complaint.

11.     Denied.

12.     Stop & Shop responds that the allegations contained in Paragraph 12 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint, and on that basis denies the allegations set forth in Paragraph 12 of the Complaint.  Further answering, the allegations contained in Paragraph 12 seek to characterize the terms of a written document, the contents of which speak for itself.

13.     Stop & Shop responds that the allegations contained in Paragraph 13 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint, and on that basis denies the allegations set forth in Paragraph 13 of the Complaint.  Further answering, the allegations contained in Paragraph 13 seek to characterize the terms of a written document, the contents of which speak for itself.

14.     Stop & Shop responds that the allegations contained in Paragraph 14 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 14 of the Complaint, and on that basis denies the allegations set forth in Paragraph 14 of the Complaint.  Further answering, the allegations contained in Paragraph 14 seek to characterize the terms of a written document, the contents of which speak for itself.

"Negotiations for New Space"

15.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint, and on that basis denies the allegations set forth in Paragraph 15 of the Complaint.  Further answering, the allegations contained in Paragraph 15 seek to characterize the terms of a written document, the contents of which speak for itself.

16.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint, and on that basis denies the allegations set forth in Paragraph 16 of the Complaint.

17.     Denied.

18.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint, and on that basis denies the allegations set forth in Paragraph 18 of the Complaint.

19.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint, and on that basis denies the allegations set forth in Paragraph 19 of the Complaint.

20.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint, and on that basis denies the allegations set forth in Paragraph 20 of the Complaint.

21.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, and on that basis denies the allegations set forth in Paragraph 21 of the Complaint.

22.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint, and on that basis denies the allegations set forth in Paragraph 22 of the Complaint.

23.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint, and on that basis denies the allegations set forth in Paragraph 23 of the Complaint.  Further answering, the allegations contained in Paragraph 23 seek to characterize the terms of a written document, the contents of which speak for itself.

24.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint, and on that basis denies the allegations set forth in Paragraph 24 of the Complaint.

25.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint, and on that basis denies the allegations set forth in Paragraph 25 of the Complaint.  Further answering, the allegations contained in Paragraph 25 seek to characterize the terms of written documents, the contents of which speak for themselves.

26.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint, and on that basis denies the allegations set forth in Paragraph 26 of the Complaint.

27.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint, and on that basis denies the allegations set forth in Paragraph 27 of the Complaint.

"Reconfiguration of the Plaza"

28.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint, and on that basis denies the allegations set forth in Paragraph 28 of the Complaint.

29.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint, and on that basis denies the allegations set forth in Paragraph 29 of the Complaint.

30.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint, and on that basis denies the allegations set forth in Paragraph 30 of the Complaint.

"Government Intervention"

31.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint, and on that basis denies the allegations set forth in Paragraph 31 of the Complaint.

32.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint, and on that basis denies the allegations set forth in Paragraph 32 of the Complaint.

33.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 of the Complaint, and on that basis denies the allegations set forth in Paragraph 33 of the Complaint.

34.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34 of the Complaint, and on that basis denies the allegations set forth in Paragraph 34 of the Complaint.

35.     Stop & Shop responds that the allegations contained in the first sentence of
Paragraph 35 of the Complaint call for a legal conclusion to which no response is required.  To
the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form
a belief as to the truth of the allegations set forth in the first sentence of Paragraph 35 of the
Complaint, and on that basis denies the allegations set forth in the first sentence of Paragraph 35
of the Complaint.  Further answering, Stop & Shop lacks knowledge or information sufficient to
form a belief as to the truth of the allegations set forth in the second and third sentences of
Paragraph 35 of the Complaint, and on that basis denies the allegations set forth in the second
and third sentences of Paragraph 35 of the Complaint.

<u>"Demands by Stop & Shop"</u>

36.     Admitted that on January 22, 2004, Stop & Shop, through counsel, informed JP
Chase Morgan Bank that Chase's conduct had interfered with Stop & Shop's planned expansion
project, and caused Stop & Shop to incur thousands of dollars in damages in extra construction
costs and lost profits.  Further answering, the allegations contained in Paragraph 36 of the
Complaint seek to characterize the terms of a written document, the contents of which speak for
itself.  Except as otherwise admitted herein, Stop & Shop denies the allegations contained in
Paragraph 36.

37.     Stop & Shop denies the allegations contained in Paragraph 37 of the Complaint as
improper characterizations of Stop & Shop's claims against Chase.  Stop & Shop admits that
Chase's conduct interfered with Stop & Shop's planned expansion project, and caused Stop &
Shop to incur thousands of dollars in damages in extra construction costs and lost profits.
Further answering, Stop & Shop's claims against Chase are set forth in greater detail in Stop &

Shop's Counterclaims contained herein.  Except as otherwise admitted herein, Stop & Shop

denies the allegations contained in Paragraph 37.

38.     Denied.

39.     The allegations contained in Paragraph 39 of the Complaint seek to characterize

the terms of a written document, the contents of which speak for itself.  Further answering, Stop

& Shop denies that the document attached as Exhibit H to the Complaint refers to the "planned

renovation" with which Chase intentionally interfered.  Except as otherwise admitted herein,

Stop & Shop denies the allegations contained in Paragraph 39.

40.     The allegations contained in Paragraph 40 of the Complaint seek to characterize

the terms of a written document, the contents of which speak for itself.  Further answering, Stop

& Shop denies that the document attached as Exhibit I to the Complaint refers to the "renovation

project" with which Chase intentionally interfered.  Except as otherwise admitted herein, Stop &

Shop denies the allegations contained in Paragraph 40.

41.     Stop & Shop admits the allegations contained in the first sentence of Paragraph 41

of the Complaint.  Stop & Shop denies the allegations contained in the second sentence of

Paragraph 41 of the Complaint.

42.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in the first sentence of Paragraph 42 of the Complaint, and on

that basis denies the allegations set forth in the first sentence of Paragraph 42 of the Complaint.

Further answering, Stop & Shop responds that the allegations contained in the second sentence

of Paragraph 42 call for a legal conclusion to which no response is required.

<u>"First Claim for Relief"</u>
("Declaratory Judgment – Force Majeure")

43.     Stop & Shop incorporates herein its responses to Paragraphs 1 through 42.

44.     Stop & Shop responds that the allegations contained in Paragraph 44 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth Paragraph 44 of the Complaint, and on that basis denies the allegations set forth in Paragraph 44 of the Complaint.

45.     Denied.

"Second Claim for Relief"<br>("Declaratory Judgment – Equitable Estoppel")

46.     Stop & Shop incorporates herein its responses to Paragraphs 1 through 45.

47.     Stop & Shop responds that the allegations contained in Paragraph 47 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth Paragraph 47 of the Complaint, and on that basis denies the allegations set forth in Paragraph 47 of the Complaint.

48.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Complaint, and on that basis denies the allegations set forth in Paragraph 48 of the Complaint.

49.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint, and on that basis denies the allegations set forth in Paragraph 49 of the Complaint.

50.     Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint, and on that basis denies the allegations set forth in Paragraph 50 of the Complaint.

"Third Claim for Relief"
("Declaratory Judgment – Equitable Entitlement")

51.    Stop & Shop incorporates herein its responses to Paragraphs 1 through 50.

52.    Stop & Shop responds that the allegations contained in Paragraph 52 of the Complaint call for a legal conclusion to which no response is required.  To the extent a response is required, Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth Paragraph 52 of the Complaint, and on that basis denies the allegations set forth in Paragraph 52 of the Complaint.

53.    Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 53 of the Complaint, and on that basis denies the allegations set forth in Paragraph 53 of the Complaint.

54.    Stop & Shop lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 54 of the Complaint, and on that basis denies the allegations set forth in Paragraph 54 of the Complaint.

55.    Denied.

56.    Denied.

**Third Defense**

Chase is estopped from bringing claims against Stop & Shop.

**Fourth Defense**

Chase's claims are barred by the doctrine of unclean hands.

**Fifth Defense**

Chase's claims are barred by the doctrine of laches.

**Sixth Defense**

Chase has waived its claims against Stop & Shop.

## Seventh Defense

Chase is estopped from asserting claims against Stop & Shop by reason of the acts and conduct of Chase.

## Eighth Defense

Chase's claims are barred, in whole or in part, by the applicable statutes of limitations.

## Ninth Defense

The rights and obligations of the parties are controlled by written documents, the contents of which speak for themselves.

## Tenth Defense

Chase has failed to allege facts sufficient to support an award of costs and/or attorney's fees.

## COUNTERCLAIMS

1.      Defendant-in-Counterclaim The Stop & Shop Supermarket Company LLC ("Stop & Shop") brings this action for damages arising out of Plaintiff-in-Counterclaim JP Morgan Chase Bank's ("Chase") intentional and willful failure to vacate retail space located at Copps Hill Plaza, Ridgefield, Connecticut (the "Premises").  At all relevant times, Stop & Shop also occupied space at the Premises.  Chase's conduct interfered with Stop & Shop's planned expansion project, and caused Stop & Shop in excess of one million dollars in damages in extra construction costs and lost profits.

## Parties

2.      Plaintiff The Stop & Shop Supermarket Company LLC is a Delaware corporation with its principal place of business at 1385 Hancock Street, Quincy, Norfolk County, Massachusetts.

3.     Upon information and belief, Defendant JP Morgan Chase Bank is a New York Banking Corporation with its principal place of business in New York City, New York.

**Facts**

Chase's Tenancy at the Premises

4.      On or about December 3, 1992, the predecessors-in-interest to Chase and Ridgefield Properties LLC ("Ridgefield") entered into a lease for retail space at the Premises (the "Chase Lease").  Chase operated a branch bank location.

5.      Pursuant to the terms of the Chase Lease, Chase's tenancy expired on December 31, 2002.  The Chase Lease did not provide any option for renewal by Chase.

Stop & Shop's Tenancy at the Premises

6.     In 1970, Stop & Shop's predecessor-in-interest commenced retail operations at the Premises.  Stop & Shop operated and continues to operate a supermarket on approximately 30,080 square feet of retail space.

7.     On or about October 26, 2001, Stop & Shop, as tenant, and Ridgefield, as landlord, entered into an Amended and Restatement of Lease regarding Stop & Shop's leasehold at the Premises (the "Stop & Shop Lease").

8.     At the time the parties entered into the Stop & Shop Lease, a Genovese Drugstore ("Genovese") operated in retail space located directly adjacent to Stop & Shop ("Building A"). Several other retail businesses also operated at the Premises in a separate structure located in front of and to the left of Stop & Shop ("Building B").  Chase operated its banking branch in another separate structure located in front of Building B ("Building C").

9.     The Stop & Shop Lease contemplated an expansion of Stop & Shop's retail space to 65,125 square feet and a reconfiguration of the Premises (the "Expansion Project").  Stop & Shop

agreed to reimburse Ridgefield for a portion of the construction costs and to pay Ridgefield an increased rent (based upon Stop & Shop's increased store size) upon completion of the Expansion Project.

10.    As originally planned, the Expansion Project involved the following:  Stop & Shop would expand into the space occupied by Genovese in Building A.  Building B would be demolished and rebuilt to accommodate existing tenants.  Building C would also be demolished and rebuilt to house a refurbished Genovese location.  Chase, along with several other retail tenants, would be relocated to other retail spaces on the Premises.

11.    Pursuant to the terms of the Stop & Shop Lease, the Lease term would not begin until Ridgefield could deliver to Stop & Shop occupancy of the former Genovese space in Building A. Genovese would not agree to surrender its Building A space until it could take occupancy of its new space in the former Building C location.  The new Genovese location could not be completed until Chase vacated Building C.

12.    As early as December 1999, Chase knew and fully understood that completion of the Expansion Project was contingent upon Chase's timely departure from Building C.  Chase also knew that construction of Stop & Shop's expanded store could not begin until Ridgefield completed construction of Genovese's new location.

13.    Stop & Shop understood that Chase's Lease expired on December 31, 2002.  Based upon Chase's anticipated vacancy of Building C on or before December 31, 2002, Stop & Shop expected to commence expansion no later than April 15, 2003.

<u>Ridgefield's Failed Negotiations with Chase</u>

14.     Stop & Shop and Ridgefield desired to begin the Expansion Project as soon as possible.  Accordingly, Ridgefield attempted to negotiate an early termination of the Chase Lease.

15.     In April 2001, Chase informed Ridgefield that it would relocate to retail space off the Premises.  Ridgefield offered to pay Chase's new landlord $50,000 as an inducement if Chase vacated the Premises by February 15, 2002.  Chase did not relocate at that time.

16.     In May 2001, Ridgefield offered Chase temporary space on the Premises in a trailer, with the right to relocate into another building upon completion of the Expansion Project.  Chase rejected the proposal.

17.     Thereafter, Ridgefield and Chase discussed several options for Chase to remain on the Premises.  Ridgefield also offered to assist Chase in locating new space off the Premises.  Chase rejected all of Ridgefield's proposals.

18.     On or about August 23, 2002, Chase's counsel sent Ridgefield a draft lease which provided for Chase's continued tenancy on the Premises.  Despite Ridgefield's request to do so, Chase failed to pursue the negotiation or execution of the proposed lease.  On October 21, 2002, Chase informed Ridgefield that Chase was pursuing tenancy off the Premises and that it did not intend to negotiate further with Ridgefield.

19.     As of October 21, 2002, Stop & Shop and Ridgefield expected that Chase would vacate the Premises at the expiration of the Chase Lease on December 31, 2002.

Commencement of the Expansion Project

20.     Throughout 2002, the Building B tenants vacated the Premises.  Stop & Shop paid certain tenants to vacate the Premises prior to the expiration of their respective leases.  Pursuant to its agreement with Ridgefield, Stop & Shop also compensated Ridgefield for rents lost as a result of the Building B tenants' early departure from the Premises.  Stop & Shop's obligation to reimburse Ridgefield for lost rents continued up until the time the former Building B tenants were relocated and operating.

21.    By summer 2002, Building B was vacant, and Ridgefield commenced demolition shortly thereafter.  In the autumn of 2002, Ridgefield commenced construction of the new Building B as well as the new Genovese building.

22.    Ridgefield could not complete construction of the new Genovese building until Chase vacated the Premises.  Consequently, and in anticipation of Chase's December 31, 2002 departure, Ridgefield constructed as much of the new Genovese building as possible without disrupting Chase's business.

<u>Chase's Interference with the Expansion Project</u>

23.    In October 2002, Ridgefield informed Chase that it expected Chase to honor the terms of the Chase Lease and vacate the Premises on or before December 31, 2002.  Ridgefield specifically informed Chase that Chase's holding over at the expiration of the Lease term would jeopardize the timely completion of the Expansion Project and delay Stop & Shop's planned expansion.

24.     By letter dated November 8, 2002, Chase acknowledged that the Chase Lease expired on December 31, 2002 and informed Ridgefield that it had found retail space off the Premises.

25.    By letters to Chase dated November 22, 2002, December 6, 2002, December 9, 2002 and December 13, 2002, Ridgefield reiterated its position that Chase was expected to vacate the Premises on or before December 31, 2002 and that Ridgefield would not renew the Chase Lease or permit a holdover.

26.     On December 19, 2002, Chase informed Ridgefield that it did not intend on vacating the Premises by December 31, 2002.  Chase remained on the Premises after December 31, 2002.

27.    Chase's failure to vacate timely the Premises constituted a breach of the Chase Lease.

28.    Ridgefield was forced to bring an eviction action against Chase in Connecticut Housing Court (Danbury Housing Session, Docket No. SP 03-11036).  Ridgefield and Chase

subsequently entered into a Stipulation for Summary Process Judgment whereby judgment for possession entered in favor of Ridgefield, with a stay of execution to May 27, 2003.

29.     Chase vacated the Premises on May 23, 2003, almost five months after the expiration of the Chase Lease.

<u>The Delay in Stop & Shop's Expansion</u>

30.     Ridgefield began demolition of the Chase bank building immediately following Chase's departure.

31.     As a direct result of Chase's holding over, Ridgefield was unable to complete the new Genovese building until July 2003.  Genovese did not vacate its Building A space until August 1, 2003.

32.     Although Stop & Shop had planned to commence expansion on April 15, 2003, the earliest Stop & Shop could begin its expansion into the former Genovese space was August 4, 2003.  Chase's holding over caused a construction delay of 111 days.

33.     Stop & Shop sustained 111 days in lost profits.

34.     Stop & Shop reimbursed Ridgefield an additional 111 days for lost rents incurred as a result of the departure of the former Building B tenants.

35.     Stop & Shop incurred additional construction costs as a result of Chase's presence on the Premises after December 31, 2002.

**Count I**
**(<u>Tortious Interference with Business Expectancies</u>)**

36.     Stop & Shop repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 though 35 as if fully set forth herein.

37.      Stop & Shop and Ridgefield had a business relationship whereby Ridgefield served as Stop & Shop's landlord.  Stop & Shop agreed to reimburse Ridgefield for a portion of the

Expansion Project's construction costs.  Ridgefield agreed to provide Stop & Shop with increased retail space at the Premises upon completion of the Expansion Project.

38.     The Expansion Project could not be completed until Chase vacated the Premises.  Stop & Shop could not commence expansion of its renovated store until approximately four and one-half months after Chase vacated the Premises.

39.     Chase knew and fully understood that completion of the Expansion Project was contingent upon Chase's vacating the Premises.  Chase also knew and fully understood that Stop & Shop could not begin expansion of its store until Chase vacated the Premises.

40.     Chase misrepresented its intentions with regard to its tenancy at the Premises.

41.     Chase intentionally and improperly held over at the end of its lease term to interfere with the Expansion Project.

42.     Chase's holding over was improperly motivated by personal benefit and to pressure Ridgefield into acquiescing to a renewed tenancy on terms favorable to Chase.

43.     As a result of Chase's knowing and willful misconduct, Stop & Shop suffered actual damages.

**Count II**
**(<u>Violation of Connecticut Unfair Trade Practices Act</u>)**

44.     Stop & Shop repeats, realleges, and incorporates by reference the allegations set forth in paragraphs 1 though 43 as if fully set forth herein.

45.     Chase was engaged in the conduct of trade and commerce at all times relevant to this Complaint.

46.     Chase's conduct constitutes unfair and deceptive acts or practices in the conduct of trade or commerce in violation of C.G.S.A. § 42-110b.

47.     As a direct result of Chase's conduct, Stop & Shop has sustained damages and is entitled to actual damages, punitive damages and attorney's fees.

### **JURY DEMAND**

Stop & Shop demands a jury trial on all issues so triable in this matter.

WHEREFORE, The Stop & Shop Supermarket Company LLC prays that the Court:

1.    Deny Chase's requests for declaratory judgment and costs;

2.    Enter judgment in favor of Stop & Shop on all counts contained in its Counterclaims in an amount to be determined at trial;

3.    Award Stop & Shop punitive damages under C.G.S.A. § 42-110g;

4.    Award Stop & Shop prejudgment interest at the statutory rate;

5.    Award Stop & Shop its reasonable attorney's fees and costs to the extent allowed by law; and

6.    Award Stop & Shop such other and further relief as the Court may deem just and proper.

March 11, 2005

Respectfully submitted,

THE STOP & SHOP SUPERMARKET COMPANY LLC,

By its attorney,

_____/s/ Lewis K. Wise_____
Lewis K. Wise
Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
CityPlace I, 22nd Floor
185 Asylum Street
Hartford, CT 06103-3460
(860) 278-7480

*Of counsel:*
Frank J. Bailey
John C. La Liberte
Anthony L. DeProspo, Jr.
SHERIN AND LODGEN LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 646-2000

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been mailed via first-class mail, postage

prepaid, on this 11th day of March, 2005 to the following:

Timothy S. Fisher, Esq.
Jason C. Welch, Esq.
McCarter & English LLP
CityPlace I, 185 Asylum Street
Hartford, CT  06103

Jeffrey J. Mirman, Esq.
Levy & Droney, P.C.
74 Batterson Park Road
Farmington, CT  06034


                                    /s/ Lewis K. Wise
                                    Lewis K. Wise