UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| J.P. MORGAN CHASE BANK, | : | CIVIL ACTION NUMBER: |
| Plaintiff | : | 3:02-CV-2266 (AWT) |
| | : | |
| V. | : | |
| | : | |
| RIDGEFIELD PROPERTIES LLC, | : | |
| AND SAMUELS & ASSOCIATES | : | |
| MANAGEMENT, LLC | : | |
| Defendants. | : | APRIL 1, 2005 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION TO DISMISS**

I.    INTRODUCTION.

By Complaint dated December 20, 2003, Plaintiff commenced this

diversity action seeking declaratory relief and damages, asking the Court to

excuse Plaintiff's refusal to vacate premises it leased from Defendant Ridgefield

Properties LLC ("Ridgefield") at a plaza in Ridgefield, Connecticut at the end of

the lease term.   The Defendants have denied the material allegations of

Plaintiff's Complaint, have asserted affirmative defenses, and Defendant

Ridgefield has brought counterclaims against Plaintiff seeking damages against

Plaintiff resulting from Plaintiff's refusal to vacate the leased premises and its

improper and malicious conduct in interfering with Defendant's lease relationships with other tenants in the Plaza, in particular Stop & Shop and Genovese Drug.

II.    STATEMENT OF FACTS.

As Defendants' Counterclaim alleges, and Plaintiff acknowledges, Ridgefield Properties and Plaintiff were parties to a lease pursuant to which Plaintiff leased premises for use as a branch bank at Ridgefield Properties' Plaza in Ridgefield, Connecticut (Counterclaim, ¶6, Complaint, ¶ 8).  The lease provided for a termination of the Plaintiff's tenancy on December 31, 2002, with no option for renewal by the Plaintiff (Counterclaim, ¶7).

In December, 1999, more than three years prior to the expiration of the lease, Ridgefield notified Defendant that it would not renew its lease with Plaintiff following expiration (Counterclaim, ¶8).  In April, 2001, Plaintiff let Ridgefield know it was negotiating for a lease elsewhere, and Ridgefield offered to permit Plaintiff to vacate early (Counterclaim, ¶10).  Ridgefield also offered Plaintiff the opportunity to lease temporary space with an option to relocate or lease other space at the Plaza following completion of construction (Counterclaim, ¶10), and

2

identified other sites in town that Plaintiff might pursue (Counterclaim, ¶11).

Beginning in May, 2002, the parties discussed other options whereby Plaintiff could lease different space in the Plaza, but Plaintiff repeatedly ignored Ridgefield's requests for comments on a new lease, and after locating a site elsewhere, informed Ridgefield in October, 2002, that it was not interested in a new lease with Ridgefield (Counterclaim, ¶¶12-14).  At the same time, Plaintiff informed Defendants that it was refusing to vacate the leased premises at the end of the lease term (Counterclaim, ¶15).  Ridgefield repeatedly made it clear that it would not permit any holdover by Plaintiff; served a Notice to Quit; and eventually commenced an action to evict Plaintiff from the leased premises. (Counterclaim, ¶¶18-21).

In addition to its refusal to vacate the leased premises until it suited Plaintiff's interests, Plaintiff knowingly compromised Ridgefield's position with its lease obligations to Genovese and Stop & Shop.  Plaintiff knew of Ridgefield's need to gain access to the leased premises.  Plaintiff failed to timely seek a new site for its branch bank although it had three years' notice, and misled Ridgefield into thinking that Plaintiff was interested in relocating at the end of the lease term

to other space in the Plaza, Plaintiff then refusing to negotiate further or let

Ridgefield know of its intentions while Plaintiff secretly negotiated for space

elsewhere (Counterclaim, ¶24).   Plaintiff also commenced groundless litigation

against Defendants and, in short, engaged in unfair and deceptive acts and

practices.  (Counterclaim, ¶24).

By this conduct, *inter alia*, Plaintiff tortiously interfered with Ridgefield's

leases with Genovese and Stop & Shop (Counterclaim, Count Three).   Plaintiff

nevertheless has moved to dismiss this Count of Defendants' Counterclaim.  For

the reasons set forth below, upon these facts, and the inferences which may

reasonably be drawn from these facts, Plaintiff's motion must be denied.

III.    ARGUMENT.

A.    The Standard For Evaluating A Motion To Dismiss.

"On a motion to dismiss under Rule 12(b)(6), the court must accept as

true the factual allegations in the complaint, and draw all reasonable inferences

in favor of the plaintiff." Bolt Elec., Inc. v. City of N.Y., 53 F. 3d 465 (2d Cir.

1995).  "The district court should grant such a motion **only** if, after viewing

plaintiff's allegations in this favorable light, 'it appears beyond doubt that the

4

plaintiff can prove **no** set of facts in support of his claim which would entitle him to relief.'"  Walker v. City of N.Y., 974 F. 2d 293, 298 (2d Cir. 1992).  (emphasis added).

When considering a motion to dismiss, the court is required to draw all reasonable inferences in a plaintiff's favor.  See, Correa-Martinex v. Arrillaga-Belendez, 903 F. 2d 49, 58 (1st Cir. 1990).  When "the suggested inference rises to what experience indicates is an acceptable level of probability,"  the Court must accept it as fact for pleading purposes.  Id., at 53.

B.    Count Three Sufficiently Alleges Tortious Interference Against Defendant

The elements of a cause of action sounding in tortious interference under Connecticut law are well-settled:

> A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendant's knowledge of that relationship, (3) the defendant's intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct.

Appleton v. Board of Education, 254 Conn. 205, 212-213 (2001)(internal

5

citations omitted).   Moreover, "it is not essential to the cause of action that the tort has resulted in an actual breach of contract."  Wellington Systems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 167-68 (1998), cert. denied, 247 Conn. 905 (1998).   Thus, Defendants need not allege that Genovese or Stop & Shop breached their lease obligations; it is sufficient if Ridgefield's performance of its obligation are more expensive or burdensome, or that Ridgefield suffered loss or damage. *Restatement 2d Torts*, Section 766A.  That is precisely what Ridgefield has alleged, and what has happened here.

Plaintiff's allegations meet these elements.  Ridgefield (1) had leases with Genovese and Stop & Shop that (2) Plaintiff knew of.   Plaintiff intended to (3) interfere with that relationship by staying in its location although it knew Plaintiff needed access to the premises to satisfy its obligations to Genovese and Stop & Shop.

Moreover, Plaintiff's conduct was tortious.   This element is satisfied upon allegations that Plaintiff is "guilty of fraud, misrepresentation, intimidation or molestation . . . or that the [plaintiff] . . . acted maliciously."   Blake v. Levy, 191 Conn. 257, 261 (1983)(internal quotations omitted).  Malice consists not of ill will, but of "lack of justification."  Daley v. Aetna Life and Casualty Company, 249 Conn. 766, 806 (1999), quoting Restatement 2d Torts §766, Comment (s) (1979).  Here Ridgefield has alleged that Plaintiff's conduct in refusing to vacate and misleading Defendants lacked justification.   Plaintiff also misrepresented its motives, falsely pretending to negotiate a new lease which it was arranging to relocate to another site.  The comment to clause (a) of Section 767 of the Second Restatement makes clear that the initiation of baseless litigation constitutes improper intimidation.   Accordingly, contrary to Plaintiff's bald assertions, Ridgefield has alleged improper motives (to stay in the premises until its new place was ready); improper means (by pretending to negotiate and its refusal to communicate and by misleading Defendants) and seeking to intimidate by bringing baseless litigation); and lack of justification.

In evaluating whether the conduct, as alleged, sufficiently alleges a claim

of tortious interference, it is appropriate to consider the following factors

identified in Section 767 of the *Restatement 2d of Torts*:

> (a)    the nature of the actor's conduct;
> (b)    the actor's motive;
> (c)    the interests of the other with which the actors
>        conduct interferes;
> (d)    the interests sought to be advanced by the action;
> (e)    the social interests in protecting the
>        freedom of action of the actor and the
>        contractual interests of the other;
> (f)    the proximity or remoteness of the
>        actor's conduct to the interference; and
> (g)    the relations between the parties.

quoted in <u>Simkins Industries, Inc. v. The Standard Group, Inc.</u>, 2001 Conn.

Super LEXIS 1848 (attached as Exhibit A).   Plaintiff has alleged that Plaintiff's

conduct was wrongful; that conduct was based upon a motive to remain in the

premises after expiration of the lease term and until its new space was

completed and ready.   Plaintiff benefited from its conduct by remaining in its

location until it no longer needed it.   Ridgefield's increased burden under its

leases with Genovese and Stop & Shop was proximately caused by Plaintiff's

conduct.

Plaintiff's assertion that Ridgefields' damage claims are barred by

Connecticut's Economic Loss Rule is disingenuous.  In Count Three Ridgefield

does not seek tort damages arising from Plaintiff's breach of contract;[1] rather,

Ridgefield seeks tort damages from Plaintiff's wrongful conduct in interfering with

its leases with Genovese and Stop & Shop, and damages to Ridgefield arising

out of its inability to perform under those leases.

---

[1]     Ridgefield seeks breach of contract damages in Count One of its Counterclaim.

VI.    <u>CONCLUSION</u>.

For all the foregoing reasons, Plaintiff's Motion to Dismiss Count Three of

Defendants' Counterclaim must be denied.

THE DEFENDANTS/COUNTERCLAIMANTS

By _____
Jeffrey J. Mirman, Esq. (ct05433)
LEVY & DRONEY, P.C.
74 Batterson Park Road
P.O. Box 887
Farmington, CT  06034
(860) 676-3120
Its Attorneys

10

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was mailed, postage prepaid, to the following counsel of record on this 1st day of April, 2005 to:

Timothy S. Fisher, Esq.
Jason C. Welch, Esq.
MCCARTER & ENGLISH, LLP
CityPlace I
185 Asylum Street
Hartford, CT 06103

Lewis K. Wise, Esq.
Rogin, Nassau, Caplan, Lassman & Hirtle, LLC
185 Asylum Street, 22nd Floor
Hartford, CT   06103-3460

_____
Jeffrey J. Mirman

11



Service: Get by LEXSEE®
Citation: 2001 Conn. Super LEXIS 1848

*2001 Conn. Super. LEXIS 1848, \**

Simkins Industries, Inc. v. The Standard Group, Inc. et al.

X01CV000165315S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF WATERBURY, COMPLEX LITIGATION DOCKET AT WATERBURY

2001 Conn. Super. LEXIS 1848

July 10, 2001, Decided
July 10, 2001, Filed

**NOTICE:  [\*1]**  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Motion to strike second count of defendants' counterclaim denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants would-be purchasers' second count of their counterclaim against plaintiff vendor alleged the tort of intentional interference with the business expectancy of the purchasers after the vendor refused to sell its products to the purchasers. The plaintiff moved to strike that count.

**OVERVIEW:** The vendor had terminated its letter agreement under which it had sold certain exclusive paper products to the purchasers, and had subsequently refused to sell those products to the purchasers. The second count of purchasers' counterclaim alleged the refusal to sell was maliciously done by the vendor to intimidate the purchasers into renewing the letter agreement and for the purpose of injuring the relationship which the purchasers had with a known customer. The court looked only to the pleadings to decide the motion to strike. The purchasers had properly pled the elements of the tort of intentional interference with business relationships. The court referred to enumerated factors. The essential element of tortiousness was satisfied by the pleading of intimidation and malice. It was then to be a matter of proof whether, in fact, the refusal to sell the paper products was improper within the scope of the cause of action. The purchasers had to demonstrate malice, not in the sense of ill will, but intentional interference without justification.

**OUTCOME:** The court denied the motion.

**CORE TERMS:** customer, motion to strike, tortious interference, paperboard, cause of action, business relations, letter agreement, interfere, counterclaim, third person, actionable, would-be, conclusory, intentionally, apartment, favorable, pleaded, pleader, malice, business relationship, third party, influencing, termination, intimidate, expectancy, malicious, purchaser, renewing, vendor, buy

### LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike 🔖

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

*HN1* The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. Conn. Gen. Prac. Book, R. Super. Ct. § 10-39. The role of the trial court is to examine the complaint, construed in favor of the pleader, to determine whether the pleader has stated a legally sufficient cause of action. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

*HN2* In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts necessarily implied and fairly provable under the allegations. Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract

Torts > Business & Employment Torts > Interference With Prospective Advantage

*HN3* Connecticut's courts have long recognized a cause of action for tortious interference with contract rights or other business relations. The Connecticut Supreme Court has cautioned, however, that not every act that disturbs a contract or business expectancy is actionable. More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract

Torts > Business & Employment Torts > Interference With Prospective Advantage

*HN4* Not every action that has the effect of damaging a party's relationships with customers is actionable: an essential element to be pleaded and proved is that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation, or molestation or that the defendant acted maliciously. More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract

Torts > Business & Employment Torts > Interference With Prospective Advantage

*HN5* The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification. More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract

Torts > Business & Employment Torts > Interference With Prospective Advantage

*HN6* One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract. More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract

Torts > Business & Employment Torts > Interference With Prospective Advantage

*HN7* Where a vendor may have legitimate business reasons for not wanting to sell to a particular party, the issue whether the refusal proceeds from such reasons rather than from a malicious desire to interfere with the would-be buyer's relationship to a third party is a question of fact. More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract
Torts > Business & Employment Torts > Interference With Prospective Advantage
*HN8* Whether conduct that interferes with a business relationship is improper depends on a variety of factors. In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relationship of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.  More Like This Headnote

Torts > Business & Employment Torts > Interference With a Contract
Torts > Business & Employment Torts > Interference With Prospective Advantage
*HN9* Numerous courts have ruled that a refusal to do business with a particular entity, if justified, for example, by a party's own financial interests, may be found not to be actionable even if it causes another party to be injured in its business relations with others.  More Like This Headnote

**JUDGES:** Beverly J. Hodgson, Judge of the Superior Court.

**OPINIONBY:** Beverly J. Hodgson

**OPINION:** MEMORANDUM OF DECISION ON MOTION TO STRIKE COUNT TWO OF DEFENDANTS' SUBSTITUTED COUNTERCLAIM

The motion to strike now before this court requires decision on whether a vendor that refuses to sell its products to a would-be purchaser is liable for the tort of intentional interference with the business expectancy of the would-be purchaser.

In the second count of their Substituted Counterclaim, the defendants, The Standard Group, Inc., Standard Folding Cartons, Inc. and Southern Standard Cartons, Inc., allege that after the termination of a letter agreement obligating the plaintiff to supply and the defendants to buy certain paperboard products, they contacted the plaintiff seeking to buy for resale a certain type of paperboard which they had long obtained from the defendants to sell to one of their customers. The defendants allege that the plaintiff "was the only paperboard [*2] manufacturer in the area which manufactured the specific type of board (i.e., coated on two sides) which the customer needed." (Substituted Counterclaim, para. 9.)

The defendants allege that the plaintiff was aware both that the defendants had in the past sold this kind of product (which they had obtained from the plaintiff during the term of the letter agreement) to this customer and that they had an on-going relationship with that customer and an expectation of continued sales of the same product to the same customer in the future. The defendants further allege that

Simkins' refusal to sell the specific paperboard to Standard was a direct result of Standard's termination of the Letter Agreement and was done to try to intimidate Standard into renewing the Letter Agreement and for the purpose of injuring the relationship which Standard had with its customer. Simkins' refusal to sell the paperboard to Standard was malicious and was done with the intent to injure the relationship which Standard had with its customer including any future sales between the two.

(Substituted Counterclaim, para. 12.)

The defendants do not allege that the plaintiff undertook any action **[*3]** directed at influencing the conduct of Standard's customer, but only that the refusal to sell the particular kind of paperboard to Standard was intended to affect Standard's own conduct.

On March 19, 2001, the court, Devlin, J., granted a motion to strike the counterclaim in which the defendants first raised this issue. In that motion to strike, the plaintiff asserted two grounds: (1) that an allegation of a refusal to sell to a party did not state a cause of action for tortious interference with a business relationship and (2) that the defendants had failed to allege use of an improper motive or means to affect the relationship with a third party. Judge Devlin granted the motion to strike on the second ground and did not rule on the issue raised in the first ground asserted. The movant has raised that ground again in connection with the substituted counterclaim.

Standard of Review on Motion to Strike
**HN1**

The function of a motion to strike is to test the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted. _Sherwood v. Danbury Hospital, 252 Conn. 193, 213, 746 A.2d 730 (2000); Novametrix Medical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992);_ **[*4]** _Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989);_ Practice Book § 10-39. The role of the trial court is to examine the complaint, construed in favor of the pleader, to determine whether the pleader has stated a legally sufficient cause of action. _ATC Partnership v. Windham, 251 Conn. 597, 603, 741 A.2d 305,_ cert. denied, _530 U.S. 1214, 120 S. Ct. 2217, 147 L. Ed. 2d 249 (1999); Dodd v. Middlesex Mutual Assurance Co. 242 Conn. 375, 378, 698 A.2d 859 (1997); Napoletano v. CIGNA Healthcare of Connecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127,_ cert. denied, _520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1990)._
**HN2**

In adjudicating a motion to strike, the court must construe the facts alleged in the complaint in the manner most favorable to the plaintiff. _Gazo v. Stamford, 255 Conn. 245, 260, 765 A.2d 505 (2001); Bohan v. Last, 236 Conn. 670, 675, 674 A.2d 839 (1996); Sassone v. Lepore, 226 Conn. 773, 780, 629 A.2d 357 (1993); Novametrix Medical Systems, Inc. v. BOC Group, Inc., supra, 224 Conn. 215; Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988)._ **[*5]** The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." _Forbes v. Ballaro, 31 Conn. App. 235, 239, 624 A.2d 389 (1993)._ Conclusory statements or statements of legal effect not supported by allegations of fact will not enable a complaint to withstand a motion to strike. _Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985); Fortini v. New England Log Homes, Inc., 4 Conn. App. 132, 134-35, 492 A.2d 545,_ cert. dismissed, _197 Conn. 801, 495 A.2d 280 (1985)._

Elements of the Tort of Intentional Interference with Business Relationships
**HN3**

Connecticut's courts have long recognized a cause of action for tortious interference with contract rights or other business relations. _Daley v. Aetna Life & Casualty Co., 249 Conn. 766, 805-06, 734 A.2d 112 (1999); Robert S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525, 536, 546 A.2d 216 (1988); Solomon v. Aberman, 196 Conn. 359, 364, 493 A.2d 193 (1985);_ **[*6]** _Blake v Levy, 191 Conn. 257, 260, 464 A.2d 52 (1983); Harry A. Finman & Son v. Connecticut Truck & Trailer Serv., 169 Conn. 407, 415, 363 A.2d 86 (1975)._ The Connecticut Supreme Court has cautioned, however, that "not every act that disturbs a contract or business expectancy is actionable." _Daley v. Aetna Life & Casualty Co., supra, 249 Conn. 805; Blake v. Levy, supra, 191 Conn. 257-58; Jones v. O'Connell, 189 Conn. 648, 660-61, 458 A.2d 355 (1983)._
**HN4**

Not every action that has the effect of damaging a party's relationships with customers is actionable: an essential element to be pleaded and proved is that "the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." *Solomon v. Aberman, supra,* 196 Conn. 365, quoting *Blake v. Levy, supra,* 191 Conn. 261. See also *Jones v. O'Connell, supra,* 189 Conn. 660.

HN5⚓

"The plaintiff in a tortious interference claim must demonstrate **[*7]** malice on the part of the defendant, not in the sense of ill will, but 'intentional interference without justification.' " *Daley v. Aetna Life & Casualty Co., supra,* 249 Conn. 806, citing 4 Restatement (Second) Torts § 766, comment (s) (1979).

Section 766 of the Restatement (Second) of Torts, which has been repeatedly cited by the Connecticut Supreme Court as defining the elements of a cause of action in Connecticut for tortious interference with business relations; see *Daley v. Aetna Life & Casualty Co., supra,* 249 Conn. 806, *Blake v. Levy, supra,* 191 Conn. 259; provides as follows:

HN6⚓

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

As the Supreme Court ruled in *Jones v. O'Connell, supra,* 189 Conn. 660-61, HN7⚓where a vendor may have legitimate business reasons for not wanting **[*8]** to sell to a particular party, the issue whether the refusal proceeds from such reasons rather than from a malicious desire to interfere with the would-be buyer's relationship to a third party is a question of fact. In *Jones* the conduct that was alleged to constitute a tortious interference with business relations was the refusal by the owners of a cooperative apartment building to consent to the purchase of stock and a proprietary lease to one of the apartments by the plaintiff. The plaintiffs alleged that the defendants' personal animus against the prospective buyer was the real reason for the refusal to consent to the purchase. The case did not include any allegation that the defendants' actions were aimed at influencing the conduct of the seller of the apartment, yet the Supreme Court analyzed the merits of the claim of tortious interference with the contract.

HN8⚓

Whether conduct that interferes with a business relationship is improper depends on a variety of factors, which are enumerated in Section 767 of the Restatement (Second) of Torts:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relationship **[*9]** of another is improper or not, consideration is given to the following factors:

(a) the nature of the actor's conduct,

(b) the actor's motive,

(c) the interests of the other with which the actor's conduct interferes,

(d) the interests sought to be advanced by the actor,

(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) the proximity or remoteness of the actor's conduct to the interference and

(g) the relations between the parties.

The Connecticut Supreme Court relied on this provision of the Restatement in *Blake v. Levy, supra*, 191 Conn. 262-63 n.3.
**HN9**

Numerous courts have ruled that a refusal to do business with a particular entity, if justified, for example, by a party's own financial interests, may be found not to be actionable even if it causes another party to be injured in its business relations with others. *Jones v. O'Connell, supra*, 189 Conn. 648; *Schulman v. J.P. Morgan Inv. Management, Inc.*, 35 F.3d 799, 809 (3d Cir. 1994); *Couldock & Bohan, Inc. v. Societe Generale Securities Corp.*, 93 F. Supp. 2d 220, 235 (D.Conn. 2000). **[*10]**

In the second count of their counterclaim, the defendants have alleged that the plaintiff acted out of malice in refusing to supply it with paperboard for a known customer. While the plaintiff characterizes this allegation as merely conclusory, the defendants have also pleaded that the plaintiff acted "to try to intimidate Standard into renewing the Letter Agreement." It is a matter of proof under this allegation of fact whether the refusal to sell goods to the defendants was "improper" within the scope of this cause of action, which is derived from the sections of the Restatement (Second) of Torts set forth above.

Assessed under the applicable standard of review, the defendants have stated a cause of action for tortious interference with business relations.

Conclusion

The motion to strike the second count of the defendants' counterclaim is denied.

Beverly J. Hodgson

July 10, 2001

Judge of the Superior Court

Service: **Get by LEXSEE®**
Citation: **2001 Conn. Super LEXIS 1848**
View: **Full**
Date/Time: Friday, October 10, 2003 - 11:32 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.