
Westlaw.

Not Reported in A.2d                                                                                              Page 1
2003 WL 1962789 (Conn.Super.), 34 Conn. L. Rptr. 572
**(Cite as: 2003 WL 1962789 (Conn.Super.))**

C
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of Hartford.
Rhona DUNCAN, Administratrix of the Estate of Kashif Broomes,
v.
PEH I, a Limited Partnership et al.
No. CV020817088S.

April 1, 2003.
Gersten & Clifford, Hartford, for Rhona Duncan.

Nancy S. Rosenbaum Law Offices, Glastonbury, for PEH I, A Limited Partnership and Starwood Hotels and Resorts Worldwide.

Unita Clarke, Brooklyn, Pro se.

Claude St. Romain, Brooklyn, Pro se.

KEVIN E. BOOTH, J.

*1 The plaintiff, Rhona Duncan, the duly appointed Administratix for the estate of her son, Kashif Duncan Broomes (plaintiff's decedent), brought the present action against the defendants, PEH I, A Limited Partnership (PEH I) and Starwood Hotels and Resorts Worldwide, Inc. (Starwood), alleging two counts of negligence and two counts of CUTPA violations. The relevant facts as alleged in the complaint filed June 3, 2002 are as follows: On August 2, 2001, the plaintiff's decedent, age 15, was staying at the Sheraton Hartford Hotel with a friend, age 13, and his friend's parents. At approximately 4:45 p.m. the plaintiff's decedent and his friend entered the hotel pool accessed by a door in the hotel lobby, which was allegedly open and unlocked. Both boys entered the shallow end of the pool unsupervised. Neither knew how to swim. The plaintiff's decedent proceeded to the deep end of the pool where he subsequently struggled to remain above water. The plaintiff's decedent became submerged under water and came to rest at the bottom of the pool face down in the deep end. Several unsuccessful rescue attempts were made by hotel employees. At 5:14 p.m., a hotel representative made a 911-emergency medical call. Eventually, the plaintiff's decedent was brought to the surface and removed from the pool by the hotel's director of sales. The paramedics arrived and administered emergency medical treatment. The plaintiff's decedent was then transported to the hospital where he died on August 4, 2001, as a result of cerebral anoxia due to drowning.

The plaintiff has brought this action against the defendants consisting of a four-count complaint. Count one alleges a negligence claim against PEH I, count two alleges liability against PEH I under CUTPA, count three is a claim of negligence against Starwood, and count four alleges liability against Starwood under CUTPA. In the two counts for violation of CUTPA, the plaintiff incorporates by reference the plurality of facts that comprise the first count for negligence. (Complaint, Count Two, ¶ 1-16 and Count Four, ¶ 1-23.) Specifically, the plaintiff alleges among other things, that (1) the defendants encouraged use of the pool through its advertising and promotional literature; (2) the defendants were negligent and careless in permitting the access door to the pool to be open and unlocked during pool hours, contrary to its directory of services which indicated that room keys were needed to enter pool area; (3) the defendants failed to implement and activate an emergency response plan; (4) the defendants failed to supervise the pool and provide a lifeguard during pool hours; and (5) the defendants did not have resuscitation devices or post directions to such equipment at the entrance to the pool. As a result, the plaintiff claims that the alleged acts and omissions of the defendant constitute unfair or deceptive acts or practices in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                    Page 2
2003 WL 1962789 (Conn.Super.), 34 Conn. L. Rptr. 572
**(Cite as: 2003 WL 1962789 (Conn.Super.))**

conduct of a trade or business in violation of CUTPA.

The defendants have moved to strike the two CUTPA claims on the ground that the claims are legally insufficient as a matter of law because: (1) the hotel's maintenance of a pool does not fall within the definition of "trade" or "commerce" under CUTPA; and (2) the plaintiff has failed to meet the criteria set forth in the "cigarette rule," a necessary requirement to state a claim for CUTPA. [FN1] Pursuant to Practice Book § 10-42, the defendants filed a supporting memorandum of law citing the legal authorities on which the motion to strike relies. The plaintiff subsequently filed a memorandum of law in opposition to the defendants' motion to strike.

> FN1. The motion fails to specify the grounds of insufficiency. See Practice Book § 10-41 (requiring that a motion to strike based on legal insufficiency distinctly specify the reason or reasons of each claimed insufficiency). The language used in the defendants' motion to strike simply states that the defendants "hereby move to strike Count Two and Count Four of the complaint pursuant to the attached memorandum of law." The defendants' reference to the supporting memorandum of law and inclusion therein of specified reasons does not dispense with the requirement of § 10-41. *Bouchard v. People's Bank,* 219 Conn. 465, 468 n. 4, 594 A.2d 1 (1991). See also *Morris v. Hartford Courant Co.,* 200 Conn. 676, 683 n. 5, 513 A.2d 66 (1986). Nevertheless, because the plaintiff failed to object to the form of the defendants' motion, and given the nonjurisdictional nature § 10-41, this court will consider the defendants' motion in the form presented. See *Bouchard v. People's Bank, supra.*

DISCUSSION
*2 "The purpose of a motion to strike is to contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted." *Faulkner v. United Technologies Corp.,* 240 Conn. 576, 580, 693 A.2d 293 (1997); see Practice Book § 10-39. "A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court ... We take the facts to be those alleged in the complaint ... and we construe the complaint in the manner most favorable to sustaining its legal sufficiency ... Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Vacco v. Microsoft Corp.,* 260 Conn. 59, 64-65, 793 A.2d 1048 (2002). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Novametrix Medical Systems, Inc. v. BOC Group, Inc.,* 224 Conn. 210, 215, 618 A.2d 25 (1992).

A. Maintenance of a Hotel Pool Falls Within the CUTPA Trade or Commerce Requirement

The court first addresses the defendants' argument that the maintenance of a pool is merely incidental to its primary trade or business of providing lodging and, therefore, does not fall under the trade or commerce requirement of CUTPA.

General Statutes § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Trade and commerce are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a(4).

The Connecticut Supreme Court has not yet interpreted the "trade or commerce" provision of CUTPA, and Superior Court cases addressing the issue have reached two diverging views in determining the definition of "trade" or "commerce." Some cases have applied the analysis used by the United States District Court for the District of Connecticut, which held that where the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 3

2003 WL 1962789 (Conn.Super.), 34 Conn. L. Rptr. 572

**(Cite as: 2003 WL 1962789 (Conn.Super.))**

actions of the defendant are incidental to its primary business, it cannot be liable under CUTPA. See, e.g., *Barnes v. General Electric Co.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93 0529354 (July 25, 1995, Hennessey, J.) (14 Conn. L. Rptr. 455) (finding that defendant's disposal of hazardous and toxic waste chemicals of its manufacturing process in a landfill was not within its normal "trade" or "commerce" within the meaning of CUTPA); *Abely Waste Oil v. Ravenswood Development Corp.,* Superior Court, judicial district of New Haven, Docket No. CV95 0369487 (September 15, 1995, Hartmere, J.) (15 Conn. L. Rptr. 562) (holding that the disposal of waste by the developer of land was purely incidental to its primary business of developing property).

*3 Conversely, other Superior Court cases have followed the conclusion reached by the Supreme Court of Massachusetts in interpreting the Massachusetts Unfair Trade Practices Act. These cases found that under a CUTPA claim, a transaction need not take place in the defendant's ordinary course of business so long as it takes place in a "business context." See, e.g., *Telesis Mergers and Acquisitions, Inc. v. Health Resources,* Superior Court, judicial district of Middletown, Docket No. CV00 0597260 (February 28, 2001, Gilardi, J.); *Feen v. Benefit Plan Administrators, Inc.,* Superior Court, judicial district of New Haven, Docket No. CV 0406726 (September 7, 2000, Levin, J.) (28 Conn. L. Rptr. 137); *Kay v. Seiden,* Superior Court, judicial district of Ansonia-Milford, Docket No.CV94 648587 (July 30, 1999, Corradino, J.) (25 Conn. L. Rptr. 192). This "business context" standard essentially holds that an isolated transaction that occurs outside of the ordinary course of the defendant's primary business may constitute a CUTPA violation provided it takes place in a business context. *Kay v. Seiden, supra,* 25 Conn. L. Rptr. at 192.

The court's reasoning in *Feen v. Benefit Plan Administrators, Inc., supra,* 28 Conn. L. Rptr. at 137, for applying the "business context" test to CUTPA claims is especially persuasive. The *Feen* court first looked to the text of the statute and explained that CUTPA is an expansive remedial statute that, by its own terms, applies to a broad spectrum of commercial activity, and, therefore, it should be liberally construed. *Feen v. Benefit Plan Administrators, Inc., supra.* CUTPA also expressly excludes a variety of commercial transactions from its coverage, but it does not expressly provide for a blanket exception to incidental activities. *Id.* Moreover, our Supreme Court has "repeatedly looked to the reasoning and decisions of the [highest court] of Massachusetts with regard to the scope of CUTPA." Likewise, employing the reasoned analysis used by the Massachusetts court in interpreting its virtually identical unfair trade statutes with respect to the issue at hand is appropriate. *Id.* Finally, "to limit actionable unfair acts or practices to those committed only in the course of a defendant's principal trade could lead to irrational and bizarre results." *Id.*

The court concurs with the analysis applied in *Feen* and finds that, unless otherwise determined by the legislature or appellate authority, the "business context" test is the applicable standard to apply to CUTPA claims. Accordingly, the advertising and maintaining a pool in a hotel is within the business context of selling accommodations. With this in mind, the court examines whether the plaintiff has adequately alleged and pleaded with particularity the criteria set forth in the "cigarette rule" required to establish a CUTPA violation.

B. Applying the Cigarette Rule

In its second argument, the defendants contend that the plaintiff has failed to allege sufficient facts to satisfy each of the criteria described by the "cigarette rule" and that the plaintiff has failed to plead with specificity each of the elements required to set forth a CUTPA claim. Moreover, the defendants assert that the injury was an isolated incident and not within reach of CUTPA. The plaintiff counters that each of the CUTPA elements has been pleaded with particularity. Specifically, the plaintiff asserts that the complaint clearly alleges that the defendants engaged in unfair and deceptive conduct that is unlawful and offends public policy, namely, that the defendants violated various

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B0055800000...    5/12/2005

Not Reported in A.2d        Page 4
2003 WL 1962789 (Conn.Super.), 34 Conn. L. Rptr. 572
**(Cite as: 2003 WL 1962789 (Conn.Super.))**

provisions of the Health Code and other safety standards and also made misleading representations of certain facts. The plaintiff further argues that the unsafe and illegal manner in which defendants maintained their pool is immoral, oppressive or unscrupulous, and creates a risk of injury to the consumer, and that at least one consumer, suffered a substantial loss as a result of such conduct.

*4 To find a violation of CUTPA, the Connecticut courts "have adopted the criteria set out in the "cigarette rule" by the federal trade commission for determining when [an act or] practice is unfair: (1)[W]hether the practice, without necessarily having been previously considered unlawful, offends a public policy established by statutes, the common law, or otherwise--[whether], in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businesspersons]." (Internal quotation marks omitted.) *Willow Springs Condominium Association., Inc. v. Seventh BRT Development Corp.,* 245 Conn. 1, 43, 717 A.2d 77 (1998).

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three ... Thus a violation of CUTPA may be established by showing either an actual deceptive practice ... or a practice amounting to a violation of public policy." (Citations omitted; internal quotation marks omitted.) *Jacobs v. Healey Ford-Subaru, Inc.,* 231 Conn. 707, 725-26, 652 A.2d 496 (1995). See also *Johnson Electric Co., Inc. v. Salce Contracting Associates, Inc.,* 72 Conn.App. 342, 349-53, 805 A.2d 735, cert. denied, 262 Conn. 922 (2002) (observing that the court had "found no precedent ... that [told it] how to determine the degree to which misconduct is unfair. In [the court's] view, the required calibration does not envisage a global standard but rather must reflect the particular circumstances of the case"). Finally, to set forth a CUTPA violation, the claim must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based. *S.M.S. Textile Mills, Inc. v. Brown, Jacobson, Tillinghast, Lahan and King, P.C.,* 32 Conn.App. 786, 797, 631 A.2d 340, cert. denied, 228 Conn. 903 (1993).

Viewing the allegations of the complaint in the light most favorable to the plaintiff, the plaintiff has alleged sufficient facts in counts two and four to support a cause of action under CUTPA. The basis for this conclusion, which is discussed below, is not predicated on the plaintiff's extensive allegations of statutory violations, but rather, hinges on the plaintiff's allegations of misrepresentation as set forth in the complaint.

"Misrepresentations are sufficient to form the basis for a CUTPA claim." *Messler v. Barnes Group,* Superior Court, judicial district of Hartford, Docket No. CV 96 0560004 (February 1, 1999, Teller, J.) (24 Conn. L. Rptr. 107). See also *Prishwalko v. Bob Thomas Ford,* 33 Conn.App. 575, 583-87, 636 A.2d 1383 (1994) (holding that allegations by the plaintiff that a used car dealer innocently misrepresented an inaccurate odometer reading was sufficient for relief under CUTPA); *Sadek v. Vitka,* Superior Court, judicial district of New Haven, Docket No. CV 252140 (July 28, 1987, Reynolds, J.) (2 Conn. L. Rptr. 876) (allegations of misleading representations sufficient to constitute violation of CUTPA). However, the expansive nature of CUTPA establishes a standard of conduct "more flexible and a remedy more complete than did the [traditional] common law" claims. See *Hinchliffe v. American Motors Corp.,* 184 Conn. 607, 617, 440 A.2d 810 (1981). For example, unlike common law misrepresentation, "CUTPA prohibits unfair or deceptive trade practices without requiring proof of intent to deceive, to defraud or to mislead." *Id.* See also *Web Press Services Corp. v. New London Motors, Inc.,* 203 Conn. 342, 362-63, 525 A.2d 57 (1987) (while common law claims for fraud, deceit and misrepresentation require proof that defendant knew of falsity of representation, CUTPA claimant need not prove defendant's knowledge that representation was false). But, in order "[for the trade practice to be deceptive [under CUTPA], it must have a tendency and capacity to deceive" and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 5

2003 WL 1962789 (Conn.Super.), 34 Conn. L. Rptr. 572

**(Cite as: 2003 WL 1962789 (Conn.Super.))**

"[t]he consumer must be deceived in his [or her] initial contact with the challenged practice." *Hinchliffe v. American Motors Corp.,* 39 Conn.Sup. 107, 120 (1982), aff'd., 192 Conn. 252, 440 A.2d 810 (1983). Moreover, while "the CUTPA plaintiff need not prove reliance ... [she] is required to prove that [she] sustained 'an ascertainable loss.' " *Walston v. Northeast Utilities and Connecticut Light and Power Co.,* Superior Court, judicial district of New Haven, Docket No. CV 92 0327441 (March 15, 1994, Martin, J.) (11 Conn. L. Rptr. 200).

*5 In the complaint, the plaintiff alleges that the defendants represented in the hotel's directory of services that room keys were needed to access the pool during pool hours. (Complaint, Count One, ¶ 16(a).) Such a representation had the capacity to deceive because, contrary to said representation, the plaintiff alleges that the defendants permitted the access door to the hotel pool to be open and unlocked during said time. (Complaint, Count One, ¶ 16(a) .) The plaintiff alleges that as a result of the acts and omissions of the defendants, a substantial and ascertainable loss was sustained, namely, the death of the plaintiff's decedent as well as expenses incurred by the estate of the plaintiff's decedent, including but not limited to medical care and funeral services. (Complaint, Count One, ¶ 17-18 and Count Two, ¶ 18-19.) [FN2] In a CUTPA claim, whether a practice is unfair or deceptive is a question of fact. *Thames River Recycling, Inc. v. Gallo,* 50 Conn.App. 767, 794, 720 A.2d 242 (1998). Viewing the facts alleged most favorably to the plaintiff, the plaintiff has adequately set forth facts to meet the criteria under the "cigarette rule."

> FN2. In their supporting memorandum of law, the defendants argue that an isolated incident is not sufficient to form a CUTPA claim; however, the Appellate Court in *Johnson Electric Co. v. Salce Contracting Associates, supra,* 72 Conn.App. at 805, resolved the split of authority that previously existed on the issue and held that a single unfair or deceptive act may constitute a CUTPA violation.

As a result of the foregoing, the court need not address arguments presented in the plaintiff's opposing memorandum of law pertaining to the defendants' purported violation of public policy as established by statute. Nevertheless, the court will briefly address the issue. In her complaint and her opposing memorandum of law, the plaintiff points largely to the defendants' alleged violation of the Connecticut Public Health Code (Health Code) §§ 19-13- B33b(b)(2), (13), and (18) and other safety violations as the basis for the CUTPA claims and urges the court to apply the holding in *Simms v. Candella,* 45 Conn.Sup. 267, 711 A.2d 778 (1998). The court finds this argument unpersuasive. Indeed, upon careful reading of the Health Code and the facts as alleged, this court found only two actual violations of the regulations: violation of § 19-13-B33b(b)(2) relating to supervisory personnel and violation of § 19-13-B33b(b)(18) relating to emergency communications. However, a violation of the Health Code does not always necessarily constitute a violation of CUTPA. See *Jacobs v. Healey Ford-Subaru, Inc.,* 231 Conn. 707, 729, 652 A.2d 496 (1995) (holding that because the defendant's statutory noncompliance was not, in fact, unfair, deceptive or oppressive, a CUTPA claim was not established). Moreover, the plaintiff in the present case has failed to allege sufficient facts to demonstrate how these violations were the actual cause of the injury. Thus, even broadly construing the facts as alleged, the court is unable to ascertain that the plaintiff's decedent's death would have been avoided had there been total compliance with the Health Code. See *Suarez v. Sordo,* 43 Conn.App. 756, 773, 685 A.2d 1144, cert. denied, 240 Conn. 906, 688 A.2d 334 (1996) (finding no CUTPA violation because "the plaintiff failed to show that he suffered harm 'as a result of' the alleged [housing code] violation"). The plaintiff also urges this court to apply the reasoning in *Simms v. Candela, supra,* 45 Conn.Sup. at 267. However, this case is distinguishable from *Simms.* In *Simms,* it was the noncompliance with the statute that was the direct cause of the injury. See *Id.,* at 373-76 (finding that the absence of a gutter, which caused the injury, was a violation of public policy contained in the Landlord and Tenant Act. When landlords do not expend money to conform to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 6
2003 WL 1962789 (Conn.Super.), 34 Conn. L. Rptr. 572
**(Cite as: 2003 WL 1962789 (Conn.Super.))**

requirements of the Landlord and Tenant Act and an individual is injured as a result thereof, CUTPA is properly invoked). In the present case, unlike in *Simms,* the alleged violations of the regulations were not the direct cause of the drowning.

*6 As for the plaintiff's argument with respect to numerous alleged violations of safety standards that are not specifically set out in the Health Code, such conclusion would be unreasonable since the defendants are only bound by the minimum safety standards as established by state statutes and regulations. For example, the plaintiff alleges that the defendants failed to provide lifeguards to supervise the use of the pool. Complaint Count One ¶ 16(e). However, the Health Code does not require that a lifeguard be on duty at all times. Rather, it only requires that a warning sign be placed in plain view when there is no lifeguard service. Regs., Conn. State Agencies § 19-13-B33b(14). There is no allegation in the complaint that the defendants *failed to warn* the public that the lifeguard service was unavailable. The court is not convinced that the plaintiff has alleged sufficient facts in the complaint to support CUTPA violations based on a violation of public policy due to violation of a statute or safety standards.

CONCLUSION

The motion to strike counts two and four of the plaintiff's complaint is denied.

2003 WL 1962789 (Conn.Super.), 34 Conn. L. Rptr. 572

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.