UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 AUG 18 P 12: 46
DISTRICT COURT
HARTFORD, CT.

J.P. MORGAN CHASE BANK,
    Plaintiff,

v.                              Civil No. 3:02-CV-2266

RIDGEFIELD PROPERTIES LLC,
SAMUELS & ASSOCIATES
MANAGEMENT, LLC, AND THE
STOP & SHOP SUPERMARKET
COMPANY, LLC,
    Defendants.

### RULING ON THE PLAINTIFF'S MOTION TO DISMISS COUNT II OF THE COUNTERCLAIM OR FOR A MORE DEFINITE STATEMENT

This is an action seeking a declaratory judgment and damages in connection with a shopping-center lease. It is brought pursuant to 28 U.S.C. § 2201.[1] By way of counterclaim, the defendant, Stop & Shop, alleges that JP Morgan Chase Bank Chase ("Chase") engaged in conduct prohibited by the Connecticut Unfair Trade Practices Act ("CUTPA"), C.G.S.A. § 42-110b, and seeks actual damages, punitive damages, and attorneys' fees and costs.

Chase now moves for dismissal of count II of the counterclaim which alleges a violation of CUTPA, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. In the alternative, Chase seeks an order requiring Stop & Shop to furnish a more definite statement of its claim.

The issue is whether Chase's failure to vacate the demised retail space ("premises")

---

[1] Title 28, 2201: (chapter 151 – Declaratory Judgments): 2201: creation of remedy: in a case of actual controversy within its jurisdiction. . . any court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

constituted unfair or deceptive business acts within the meaning of CUTPA. Because the Court concludes that Chase's failure to vacate did not violate CUTPA, the motion to dismiss is granted.[2]

## FACTS

The counterclaim alleges the following: In December, 1992, the predecessors-in-interest to Chase, and Ridgefield Properties ("Ridgefield") entered into a ten-year lease for a retail space at the Copps Hill Plaza in Ridgefield, CT ("plaza"). Chase operated a branch bank location with a drive-through window on the premises. The lease contained no option to renew and therefore would expire on December 31, 2002.

In December, 1999, Ridgefield notified Chase that it would not renew the lease. In February, 2001, Ridgefield informed Chase that should it choose to move to a different space in the plaza, it would not be allowed to have a drive-through window to service its customers. Ridgefield informed Chase that after Chase's lease expired, Eckerd drug store would operate the alloted drive-through window.

In April, 2001, Chase informed Ridgefield that it was negotiating for a lease outside of the plaza. Ridgefield offered to pay Chase's new landlord $50,000 as an inducement if Chase vacated the premises early. Chase did not relocate.

In October, 2001, Ridgefield entered into an Amended Restatement of Lease with Stop & Shop regarding Stop & Shop's leasehold at the plaza. The new lease provided for an expansion of Stop & Shop's retail space and a reconfiguration of the premises. Stop & Shop understood that the Chase lease expired on December 31, 2002 and based on that fact, expected

---

[2] As the court has granted the motion to dismiss, the motion for a more definite statement is denied as moot.

to begin its expansion no later than April 15, 2003.

In March, 2002, Ridgefield submitted to Chase a sketch of new building space in the plaza for Chase and stated that if Chase remained in the plaza, Ridgefield would apply to the Ridgefield zoning board for approval of an additional drive-through window for Chase. In May, 2002, Ridgefield and Chase discussed options whereby Chase might lease a different space within the same plaza.

In September, 2002, Ridgefield informed Chase that it would no longer seek approval for the second drive-through window. In October, 2002, Chase informed Ridgefield that it was not interested in leasing a different space within the same plaza. Chase informed Ridgefield that if it were to vacate the premises on time, it would incur substantial harm, including the loss of its customer base and the cost to re-enter the market as a new market participant. Chase remained on the premises after the lease expired.

Ridgefield communicated to Chase that it would not permit any holdover by Chase, served Chase a notice to quit, and commenced an action to evict Chase from the premises in the Connecticut superior court. As a result of the eviction proceedings, Ridgefield and Chase agreed to a summary process judgment whereby the court rendered judgment for possession in favor of Ridgefield, with a stay of execution to May 27, 2003. On May 23, 2003, Chase vacated the premises.

## **STANDARD**

When ruling on a 12(b)(6) motion, the court must presume that all well-pleaded facts alleged in the complaint are true and draw all reasonable inferences from those facts in favor of the plaintiff. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993). The court may consider only those

facts "stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d. Cir.1991). A motion to dismiss pursuant to Federal Rule 12(b)(6) is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir.2001).

## DISCUSSION

Chase moves to dismiss count II of the counterclaim on grounds that it fails to plead conduct cognizable under CUTPA. Specifically, Chase argues that, as a business engaged in banking, it cannot be liable for damages arising from the leasing of retail space, as it is not the type of "trade or commence" in which Chase is engaged.

In response, Stop & Shop argues that Chase was engaged in "trade or commerce" within the meaning of CUTPA as Chase's failure to vacate "was a calculated business decision motivated directly by Chase's desire to avoid a disruption of its banking business." Stop & Shop additionally states that a "transaction need not take place in the defendant's ordinary course of business so long as it takes place in a business context." *Nation v. Allstate Ins. Co.*, 2005 WL 531332 at *3 (Conn. Super. Ct. January 31, 2005).

The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a defines "trade or commerce" as "the advertising, sale, rent, or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." *Id.* A CUTPA violation "may not arise out of conduct that is merely incidental to the performance of one's trade or commerce."

4

*Cornerstone Realty, Inc., v. Dresser Rand Co.*, 993 F.Supp. 107, 113 (D.Conn.1998) (where an industrial company was held not liable under CUTPA for its real estate transactions). *See also Brandeweide v. Emery Worldwide*, 890 F.Supp. 79, 81 (D.Conn.1994) (where the plaintiff's unfair trade claim failed because the defendant's conduct in leasing an aircraft was incidental to its primary business of providing overnight freight service). The leasing of space simply to conduct business is not "trade or commerce" for purposes of CUTPA. *Arawana Mills Co. v. United Technologies Corp.*, 795 F.Supp. 1238, 1253 (D.Conn.1992) (where a business' leasing of space in which to conduct its business was held not "trade or commerce" for purposes of CUTPA). Further, in order for there to a CUTPA violation, , "[a] plaintiff must allege that the defendant has committed the alleged wrongful acts with such frequency as to indicate a general business practice." *Quimby v. Kimberly Clark Corp.*, 28 Conn.App. 660, 672, 613 A.2d 838, 845 (1992).

In this case, Chase leased the premises in order to conduct banking business. Because Chase is a bank, its leasing of the premises was merely incidental to its trade.[3] Moreover, there is no allegation that Chase's holdover conduct occurred with such frequency so as to constitute a general business practice. Rather, Chase failed to fulfill its lease obligations "due to the unique circumstances of this particular case, as distinguished from unfair or deceptive acts or practices in . . . trade or business." *Jacobs v. Healey Ford-Subaru, Inc.*, 231 Conn. 707, 729, 652 A.2d 496, 507 (1995). Accordingly, Chase is entitled to judgment as a matter of law on the CUTPA

---

[3] Because Stop & Shop's alternative argument that Chase is in the leasing business was not contained in its complaint, it is not considered by the court. "A district court must confine itself to the four corners of the complaint when deciding a motion to dismiss under Rule 12(b)(6)." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

claim.

## CONCLUSION

In view of the foregoing, the court concludes that Chase's failure to vacate the premises can not form the basis of a CUTPA violation. Chase's motion to dismiss count II of the counterclaim (document no. 76) is GRANTED. Chase's motion for a more definite statement is DENIED AS MOOT.

It is so ordered this 17th day of August, 2005 at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge